# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| Norman Peck,<br>    Plaintiff,<br><br>    v.<br><br>REV-1 Solutions, LLC,<br>    Defendant | Case No. _____<br><br>**COMPLAINT**<br><br>28 USC §§ 1331 and 1343<br>Demand for Jury Trial |

**1:18-cv-3989 RLY -TAB**

# COMPLAINT

## Introduction

On December 14, 2017 Norman Peck received a collection notice from collection agency REV-1

Solutions, LLC (hereafter, "REV-1") that shows—without dispute or objection—falsehoods and

violations of the Fair Debt Collection Practices Act (FDCPA). The FDCPA has provisions for

"actual", "costs-of-the-action", "additional", and "punitive" damages to parties who have

suffered injuries caused by debt collectors. How much will the COURT award Peck for his actual,

costs-of-the-action, additional, and punitive damages?

## Venue, Standing, and Jurisdiction

**The United States District Court for the Southern District of Indiana, Indianapolis**

**Division (COURT) is the proper venue for this civil action.** An FRCP 12(b)(3) defense is

inapplicable.

**Peck has standing to bring suit.**[1] He has been a resident of Howard County, Indiana at all

---

[1] Standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege". *Spokeo v. Robins*, 578 U.S. ___, S.Ct. No. 13–1339 (2016), slip op. (J. Thomas, concurring) at 6 (quoting

times relevant to this action, which he commences in a district court appropriate for enforcing

Debt Collection Practices liabilities within one year from the date that Peck received notification

of REV-1's FDCPA violations.[2] He files this FRCP 7(a)(1) pleading by delivering it—via USPS

certified mail #7009 1410 0001 0556 0294[3]—to the district clerk in a manner prescribed by the

Federal Rules of Civil Procedure.[4]

   **This COMPLAINT satisfies the jurisdictional requirements.**[5] The COURT has subject-matter

jurisdiction over claims. The COURT has original jurisdiction over the federal Fair Debt

Collection Practices Act and REV-1's violations thereof. The COURT has original jurisdiction

over this civil action to recover damages for injury to Peck for deprivation of rights and/or

privileges and jurisdiction to grant Peck relief. REV-1 has no affirmative defense under FRCP

12(b)(1). Peck clearly alleges facts demonstrating that he may invoke this COURT's remedial

---

*Tennessee Elec. Power Co. v. TVA*, 306 U.S. at 118–138 (1939)).

[2] FRCP 3. See also Public Law 95–109, 91 Stat. 874, Title VIII (Debt Collection Practices), §813(d):
> An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

[3] USPS Form 3811 (return receipt request) #9590 9402 3805 8032 4606 69.

[4] FRCP 5(d)(2)(A). Rule 5-1a of the Local Rules of the U.S. District Court, Southern District of Indiana (L.R.). This pleading is a case-initiating document filed in paper form and satisfies all formatting and non-electronic filing requirements necessary for the purpose of filing. L.R. 5-2(b), L.R. 5-1(b), and L.R. 5-1(d). Three copies of this COMPLAINT are being filed with the clerk. One copy is for the COURT record, one is for the defendant, and one is for the plaintiff. Peck wants all pages of his copy of his COMPLAINT stamped to show that his entire COMPLAINT is in the COURT record (*e.g.*, "FILED"). Peck includes an envelope bearing his name/address and sufficient postage for the return mailing of his copy.

[5] Peck states claims for relief and a short and plain statement of the grounds for the COURT's jurisdiction. FRCP 8(a)(1). This COMPLAINT is timely filed. 15 USC §1692k(d). Peck brings statements of material facts, which are identified by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Justifiable inferences of genuine issues can be drawn from these facts. *Id.* at 255. These facts demonstrate why relief can be granted upon each of Peck's claims. Peck furnishes—at a bare minimum—"a short and plain statement of the claim[s] showing that the pleader is entitled to relief". FRCP 8(a)(2). Peck brings specific facts, which give the defendant fair notice of what the claims are and the grounds upon which they rest. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Peck's grounds are "more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This complaint states claims to relief that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

powers.[6] This COMPLAINT survives a motion to dismiss under FRCP 12(b)(6), which does not countenance dismissals based on a disbelief of the factual allegations.[7] The COURT has *in persona* jurisdiction over the parties. REV-1 is subject to the Fair Debt Collection Practices Act's due process. REV-1 lacks an apposite affirmative defense under FRCP 12(b)(2).

Peck has no means of travel to the COURT and wishes to avoid delay and ever-increasing mailing costs.[8] He seeks authorization to submit his future filings via electronic means.[9] Federal Rules of Civil Procedure (FRCP), Rule 3, 15 USC §1692k(d), 28 USC §1331, and 28 USC §1343(a)(1) are fully applicable.

---

[6] *Warth v. Seldin*, 422 U.S. 490 (1975) at 490, 498–99: "[T]o have standing a complainant must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Peck has satisfied the three elements that are held to be the "irreducible constitutional minimum" of standing. *Spokeo*, S.Ct. No. 13-1339 at 1 (syllabus) and at 6 (J. Alito) citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

[7] *Walker v. National Recovery, Inc.*, 200 F.3d 500 (7th Cir. 1999) quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[8] FRCP 1: "to secure a just, speedy, and inexpensive determination of every action and proceeding."

[9] FRCP 5(d)(3). L.R. 5-2(a). The plaintiff is currently *pro se* and thus needs authorization to file electronically. L.R. 5-3(g). This filing includes Peck's motion for such e-filing (with a proposed order per L.R. 5-1(b)).

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Venue, Standing, and Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Statement of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Claims Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    COUNT I – Violation of 15 USC §1692g(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    COUNT II – Violation of 15 USC §1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    COUNT III – Violation of 15 USC §1692f(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    COUNT IV – Violation of 15 USC §1692e(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    COUNT V – Violation of 15 USC §1692g(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    COUNT VI – Violation of 15 USC §1692e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . 17
    COUNT VII – Violation of 15 USC §1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    COUNT VIII – Violation of 15 USC §§1692d, 1692f, and 1692k . . . . . . . . . . . . . . . 19
Damages Which Can Be Awarded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Prayer (Relief Wanted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Complimentary Closing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Statement of Case

**REV-1 is governed under the Consumer Credit Protection Act[10] and Fair Debt Collection**

**Practices Act (FDCPA).[11]** Indiana abides by and adheres to these two federal laws. Courts of

competent jurisdiction—both state and federal—have drawn legal conclusions about the

FDCPA. Because these conclusions are in substantial agreement regarding the issues in this

lawsuit, Peck cites the most salient caselaw—with full faith and credit.

**The validity of a debt allegation isn't in question.** The Fair Debt Collection Practices Act

is designed to protect consumers from the unscrupulous antics of debt collectors.[12] The primary

issues are (1) how the alleged debt was or was not validated and (2) the wrongful actions of

REV-1 in attempting to collect the alleged debt.

**Each "violation of procedural right granted by statute" constitutes an injury in fact.[13]**

The defendant committed wrongful actions that violated (a) the federal law under the FDCPA

and (b) Peck's civil rights. Peck alleges more than just "bare procedural violation[s]."[14]

**The *bona fide* error defense in §1692k(c) does not apply.** The Supreme Court held that a

§1692k(c) defense does not apply to a debt collector's mistaken interpretation of the FDCPA's

---

[10] 15 USC Chapter 41, §§1601–1693r.

[11] Public Law 95–109, 91 Stat. 874, "Debt Collection Practices", enacted September 20, 1977; codified in the United States Code, Title 15, Chapter 41, Subchapter V, §§1692–1692p.

[12] *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998).

[13] *Spokeo v. Robins*, 578 U.S. ___, 136 S.Ct. at 1540 (2016). Peck is not required to allege any additional harm beyond the ones Congress has identified; Peck seeks to vindicate his own private rights; Peck sues based on the violations of his private rights that Congress created and need not allege actual harm beyond the invasion of those private rights; REV-1's violations of Peck's personal legal rights satisfy the injury-in-fact requirement; Peck has standing; he shows multiple injuries to his particular rights (as distinguished from the public's interest in the administration of the law); Peck demonstrates definite and concrete adverseness—rather than hypothetical, conjectural, speculative, or abstract injuries; Peck has a personal stake in the outcome; Peck alleges particularized facts demonstrating that REV-1's practices harmed him and that Peck would benefit personally in a tangible way with the COURT's intervention. *Spokeo*; *Stern v. Marshall*, 564 U.S. 462, slip op. at 23 (citing *Crowell v. Benson*, 285 U.S. 22, 50–51 (1932)) ("cases of private right, that is, of the liability of one individual to another under the law as defined.").

legal requirements.[15]  Furthermore, such a misinterpretation "cannot be 'not intentional'".[16]

FDCPA violations are "subject to civil penalties of up to $16,000 per day."[17]

## Statement of Facts

In this short and plain statement Peck makes simple, concise, and direct allegations showing that

he is entitled to relief on his claims.[18]

### 1. REV-1 sent Peck a debt-collector notice in December 2017.

On December 14, 2017 Peck received an envelope from "REV-1 SOLUTIONS, LLC, RETURN

MAIL ADDRESS, 517 US HIGHWAY 31 N, GREENWOOD IN 46142-3932".  Through

second glassine window Peck's name, mailing address, and a barcode were clearly visible. The

barcode was also printed on the envelope. The envelope contained a single sheet of paper, which

was dated December 12, 2017. The sender of this correspondence failed to sign it—or even to

identify himself/herself.  The body of this letter in its entirety follows:

> This account has been listed with our office for collections. If you need
> to make a payment arrangement or discuss your account, please call a
> REV-1 Solutions representative at **888.972.8055**. For your convenience,
> you may also make your payment online by visiting our website at
> **www.rev1soutions.com** and entering your account number **21384065**. If
> you are mailing in your payment, please fill out the information on the
> reverse side and return that portion of the form in the enclosed envelope.
>
> Unless you notify this office within 30 days of receiving this notice that
> you dispute the validity of this debt or a portion thereof, we will assume
> the debt is valid. If you notify this office in writing within 30 days of
> receiving this notice that you dispute the validity of this debt or any

---

[14] *Spokeo*, S.Ct. No. 13–1339, slip op. at 2 (syllabus) and at 8–11 (J. Alito).

[15] *Jerman v. Carlisle*, 559 U.S. 573, S.Ct. No. 08–1200 (2010) at slip op. at 2 (syllabus) and 6–30 (J. Sotomayor).

[16] *Jerman*, slip op. at 2 (syllabus).

[17] *Jerman*, slip op. at 2 (syllabus). "[V]iolations of the FDCPA are deemed to be unfair or deceptive acts or practices under the Federal Trade Commission Act (FTC Act), 15 U. S. C. §41 et seq." *Ibid.*

[18] FRCP 8(a)(2) and (d)(1).

portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you so request this office in writing within 30 days of receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.[19]

### 2. Peck immediately disputed REV-1's collection notice.

On December 19, 2017 Peck remitted—by USPS certified mail—a one-page letter to REV-1

disputing its December 12, 2017 correspondence—commonly referred to as a collection notice.

Among other things, Peck noted that:

- prior to receiving the collection notice, Peck had neither bought REV-1's merchandise, asked REV-1 to perform any service, nor even heard of REV-1;
- Peck demanded a signed and sworn statement made before a notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness, stating that the reported indebtedness was a legal indebtedness under all applicable state and federal laws and was not subsequently disputed, and swearing that this purported debt was not nor ever had been part of any tax write-off scheme nor insurance claim;
- Peck demanded validation and competent evidence of some contractual obligation without consumer protection encumbrance whereby he incurred the original claims associated with this purported debt;
- REV-1's failure to provide such information in a timely manner might constitute *prima facie* evidence of intent to defraud, intimidate, or coerce Peck and to deprive him of his civil rights;
- any contact made by REV-1 with any third-party firm or entity regarding this issue, absent compliance with each and every part of this demand for validation, might constitute violation of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act and might constitute grounds for civil or criminal action or complaints being filed against REV-1;
- Peck's requests weren't arduous; and
- Peck and REV-1 could settle this matter quickly in an amicable fashion.

---

[19] Nowhere in the letter is anyone identified as a creditor. Above the body of the letter is the text: "Client: COMMUNITY HOWARD REGIONAL HEALTH SYSTEMS".

Tina Bates signed for receipt on December 22, 2017.  REV-1 has neither responded nor fulfilled any of Peck's dispute-letter requests.

### 3. REV-1's procedural and substantive debt-collector obligations.

The purpose of the Fair Debt Collection Practices Act is to eliminate abusive debt-collector practices.[20]  To that end the U.S. Supreme Court has ruled that "the Act imposes various procedural and substantive obligations on debt collectors".[21]  While REV-1 is a "debt collector"—both by statutory definition and its own admission[22], there is no debt to collect from Peck.[23]  There is no dispute that he did not enter into a contract with REV-1 concerning the transaction of money, property, insurance or services; he has no obligation to make payments to REV-1; nor has REV-1 identified a "creditor".[24]

REV-1's December 12, 2017 collection notice showed postal addresses in two states for the purpose of debt collection.[25]  The defendant thus provided *prima facie* evidence of using "interstate commerce or the mails".[26]

### 4. Peck gets another notification from REV-1's office in Greenwood, Indiana.

On October 13, 2018 Peck received a postal mailing containing two sheets of paper with the letterhead of "Community Health Network"—a single-sided cover letter dated October 9, 2018

---

[20] 15 USC §1692(e). There "is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 USC §1692(a).

[21] *Sheriff v. Gillie*, 136 S.Ct. 1594 (2016), slip op. at 1.

[22] 15 USC §1692a(6). The following statement appears at the bottom of the REV-1's collection notice: "**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. ...**"

[23] See definition of "debt". 15 USC §1692a(5). *Cf.* §1692a(3) ("consumer") and §1692a(4) ("creditor"). [N.B.: The FDCPA doesn't define "credit".]

[24] In summary: REV-1 presented no evidence of a "creditor" who offered or extended Peck "credit" creating a "debt" that he owed, thereby making him a "consumer". 15 USC §1692a(3)-(5).

[25] *I.e.*, "517 US HIGHWAY 31 N, GREENWOOD IN 46142-3932", "DEPT 5621, PO BOX 790126, ST LOUIS MO 63179-0126" and "DEPT 5621, PO BOX 790126, ST LOUIS MO 63179-0126". Such multiplicity is misleading. Peck is confused about REV-1's actual address.

and a double-sided attachment. While no individual's name, title, or signature was displayed, a barcode again was visible through the envelope's window. Another barcode was printed on the envelope.

This correspondence pertained explicitly to "affordable health care coverage" and "Medicare" (*i.e.*, a federal government health-insurance program). At the bottom of the first page of its attachment, "Community Health Network" listed its mailing address as "517 US HIGHWAY 31 N, GREENWOOD IN 46142-3932"—*i.e.*, the return mail address listed on REV-1's December 12, 2017 FDCPA debt-collector notice. This REV-1 address appears directly below the words: "Not affiliated with the U. S. government or Medicare program." This statement directly contradicts the contents of the correspondence.

Peck was confused, upon receiving REV-1's December 12, 2017 collection notice, about the lack of a "creditor". He now understands: REV-1 and Community Health Network—and perhaps its alleged "Client" ("COMMUNITY HOWARD REGIONAL HEALTH SYSTEMS")—are operating a joint business, or businesses, an office at 517 US HIGHWAY 31 N, GREENWOOD IN 46142-3932.

5.  Peck gives REV-1 fair warning of this lawsuit.

Peck sought to negotiate a settlement out of court. On November 15, 2018 the plaintiff mailed a tort letter to REV-1 at 517 U.S. Highway 31 N., Greenwood, Indiana, in which he stated that he would entertain reasonable offers to make him whole or—in the alternative—file this lawsuit. Gloria Elliot signed for receipt of Peck's tort letter shortly after November 15.

6.  REV-1 declines settlement negotiations.

Peck hasn't received a communication from REV-1 in response to his November 15, 2018 letter.

7.  Summary.

---

[26] 15 USC §§1692(d) and 1692a(6).

REV-1 has done nothing to prove that Peck has a contractual obligation, a "creditor", or indebtedness to REV-1. REV-1 hasn't explained why Peck owes the alleged debt or provided a sworn statement by a person having firsthand knowledge of the purported debt. The following assertions by Peck are undisputed and outstanding:

1. Error or fraud was involved in the alleged debt that was placed with REV-1 SOLUTIONS, LLC for billing;
2. The alleged debt is part of a tax write-off scheme or insurance claim;
3. REV-1 did not report Peck's dispute of the alleged debt;
4. REV-1's failure to furnish Peck's demand for validation is *prima facie* evidence of intent to defraud, intimidate, or coerce him and to deprive him of his civil rights; and
5. REV-1's failure violates the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.

## Claims Upon Which Relief Can Be Granted

REV-1 has repeatedly crossed lines proscribed by the Fair Debt Collection Practices Act and is responsible for the consequences. In the general context of consumer protection, the Supreme Court held that "it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'"[27]

The FDCPA expressly, or by clear implication, grants rights of action and thus standing to seek relief.[28] Peck submits the following eight counts of FDCPA violations by REV-1. Each count contains triable issues of material fact, based on the plaintiff's current knowledge. Peck has reason to believe and does believe that the discovery phase of this civil action will yield

---

[27] See *Russell v. Equifax*, 74 F.3d 30 (2nd Cir. 1996) (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) at 393, 85 S.Ct. 1035 at 1047 quoting *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952) at 340, 72 S.Ct. 329 at 330-31).

[28] *Warth v. Seldin*, 422 U.S. 490 (1975) at 510.

many more triable claims; for instance, REV-1's violations of the Fair Credit Reporting Act.[29]

The Seventh Circuit instructs its lower courts to view debt-collector letters through the perspective of the "unsophisticated consumer" (*i.e.*, the unsophisticated-consumer standard) and to then apply this standard to the claims of plaintiffs.[30] Under 15 USC §1692e, ignorance is no excuse, "even when false representation was unintentional."[31]

### COUNT I – Violation of 15 USC §1692g(a)(4)[32]

REV-1's letter stated: "If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain the verification of the debt … and mail you a copy of such … verification." Peck followed REV-1's instructions. His written response within the proscribed 30-day period on December 19, 2017 called for a signed and sworn verification of the alleged debt. REV-1 did not respond. The intentions that REV-1 displayed in its December 12, 2017 collection-notice confused Peck about his verification rights. The collection notice violates the clear language of the Fair Debt

---

[29] *Sayles v. Advanced Recovery Systems, Inc.* (5th Cir. 2017) #16-60640, slip op. at 4 (the 30-day requirement of §809 "does not carry over to §807(8)"). Examples of additional triable claims are §807(8) of P.L. 95-109 and the Fair Credit Reporting Act. *Cf.* Peck's dispute-letter reference to "Fair Credit Reporting Act" and "any tax write off scheme nor insurance claim" on page 7, *supra.*

[30] *Turner v. J.V.D.B & Associates*, 330 F.3d 991 (7th Cir. 2003). See, *e.g.*, 15 USC §§1692e and 1692f.

[31] *Turner* at 330 F.3d 997 (citing *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) at 472 citing *Russell*, 74 F.3d at 33).

[32] 15 USC §1692g(a)(4) (Validation of debts):

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, [], send the consumer a written notice containing—… (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector. [See §1692g(a)(4) notes referencing "Pub. L. 90–321, title VIII, §809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, §802, Oct. 13, 2006, 120 Stat. 2006." *Cf.* footnotes 2 and 11, *supra.*]

Collection Practices Act.[33] REV-1 did not confront the merits of Peck's contention that REV-1's

dunning letter was confusing.[34] Peck seeks judgment in his favor for REV-1's failure to validate

the alleged debt.

### COUNT II – Violation of 15 USC §1692e(10)[35]

When Peck received REV-1's collection notice on December 14, 2017, he was given notice of

necessary information.[36] In writing to Peck, REV-1 attempted to obtain credit-card

information.[37]

A collection notice is deceptive when it can reasonably be read to have two or more different

meanings, one of which is inaccurate. The terminology in REV-1's collection notice is

reasonably susceptible to an inaccurate reading. Its vagueness or uncertainty will not prevent a

conclusion of deception under 15 USC §1692e(10).[38] To an unsophisticated person, a

---

[33] 15 USC §1692g(a)(4): "[V]erification of the debt will be mailed". Compare with REV-1's collection notice: "[T]his office will obtain verification of the debt [] and mail you a copy".

[34] *Walker v. National Recovery*, 200 F.3d 500:

> "*Bartlett* [*v. Heibl*, 128 F.3d 497 (7th Cir. 1997)] gave debt collectors a plain-language reconciliation that if used produces a safe harbor from suits alleging confusion. When the *Bartlett* language is not employed, however, a debt collector whose dunning letter suggests urgency must meet on the merits a contention that the letter would confuse an unsophisticated reader."

[35] 15 USC §1692e(10):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[36] *Russell v. Equifax*, 74 F.3d 30 ("... gives the consumer the information necessary to challenge the debt allegedly owed before making payment to the independent collection agency.")

[37] "To pay by MasterCard, Visa, or American Express, fill out below: CARD NUMBER, SECURITY CODE, CARDHOLDER SIGNATURE, EXPIRATION DATE", "If you wish to make your payment via credit card, please complete the information below and return".

[38] *Russell* (citing *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) at 1319 and *Piles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) at 25).

---

communication that combines notification of both prompt payment and the 30-day verification period may produce befuddlement.[39]

It is a "well-settled principle that the FDCPA is a strict liability statute"; Peck "need not show intentional conduct by the debt collector to be entitled to damages."[40] The defendant failed to validate and falsely represented an alleged debt and used deceptive means to obtain very private information. Peck seeks judgment in his favor for REV-1's violation of §1692e(10).

### COUNT III – Violation of 15 USC §1692f(8)[41]

As noted above, Peck received from REV-1—on two occasions—envelopes with glassine windows through which "a barcode that, when scanned by the appropriate reader, [would reveal the collection] account number."[42] A "debt collector violates §1692f(8) by sending a collection letter in an envelope that displays the debtor's bare account number" or "(assumedly) offending barcode".[43] This barcode, when read or scanned, "results in a display of a string of numbers, such as the account number of the alleged debts [that REV-1 ] assigned to [Peck] and/or a reference or registration code number."[44] The account, reference, or registration numbers exposed constitute personal identifying information and its disclosure has the potential to cause

---

[39] *Walker* (citing *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir. 1994) at 1257).

[40] *Spears v. Brennan* (Ind. App. Ct. 2001) citing *Russell*, 74 F.3d at 33 and *Bentley*, 6 F.3d at 63.

[41] 15 USC §1692f(8):

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

[42] *Daubert v. NRA Group LLC* (3rd Cir. 2017) case #16-3629, slip op. at 3.

[43] *Id.* at 16-17.

[44] *Stever v. Harrison* (D.N.J., 2017) case #16-298, slip op. at 2.

harm to the consumer; the barcode visible through the envelope's glassine window is clearly a §1692f(8) symbol used to communicate with the alleged debtor.[45]

In pertinent part, Section 1692f(8) prohibits "using *any language or symbol*, other than the debt collector's address" on—or seen within—any debt-collector envelope.[46] Peck suffered a concrete, injury-in-fact harm due to the possibility of disclosure of personal identifying numbers through REV-1's barcode.[47] The overwhelming majority of courts have determined that FDCPA violations under §1692e and §1692f give rise to concrete, substantive injuries sufficient to establish Article III standing.[48]  "In *Nickelodeon*, the [Third] Circuit explained that 'unlawful disclosure of legally protected information' constituted 'a clear *de facto* injury.'"[49] The intangible harm that Congress sought to remedy "has a close relationship to harm [i.e., invasion-of-privacy] that has traditionally been regarded as providing a basis for a lawsuit in English or American courts".[50]  The defendant's disclosure of any language or symbol "implicates core privacy concerns."[51]  Peck alleges "a sufficiently 'particularized' injury"[52] and seeks judgment in his favor for REV-1's repeated barcode violations.

---

[45] *Id*. at 12.

[46] *Id*. at 10 and 12 [emphasis in original].

[47] *Id*. at 7. ("The Court finds that such allegations satisfy the concrete requirement of the injury in fact analysis.")

[48] *Id*. at 7, fn.3 (citing *Bock v. Pressler*, 2017 WL 2304643 (D.N.J. 2017)).

[49] *Stever* at 8 (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016)).

[50] *Stever* at 9 (quoting *Spokeo v. Robins*, 136 S.Ct. at 1549).

[51] *Stever* at 10 (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014) at 304).

[52] *Stever* at 11 (citing *Fuentes v. AR Resources, Inc.*, 2017 WL 1197814 at *5).

**COUNT IV – Violation of 15 USC §1692e(14)**[53]

As noted in the Statement of Facts (see page 6, above) Peck received October 9, 2018

Community Health Network notification about its mailing address at REV-1's business location:

"517 US HIGHWAY 31 N, GREENWOOD IN 46142-3932".

"Although the FDCPA does not say what a 'true name' is, its import is straightforward: A

debt collector may not lie about his institutional affiliation."[54]  The Seventh Circuit declared:

"Notices sent to debtors must not confuse them about the verification rights established by the

Fair Debt Collection Practices Act".[55]  Additionally, a debt collector's violation of 15 USC

§1692e "is objective, turning not on the question of what the debt collector knew but on whether

the debt collector's communication would deceive or mislead an unsophisticated, but reasonable,

consumer."[56] Furthermore, the unsophisticated-consumer test applies to §1692e and §1692f.[57]

Peck, again, is confused.[58] REV-1 seems to be posing as "Community Health Network"—or vice

versa. Peck seeks judgment in his favor for the defendant's deceptive and misleading

representation of the true name of its business, company, or organization.

---

[53] 15 USC §1692e(14):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

[54] *Sheriff*, at slip op. 9 (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F. 3d 1091 (6th Cir. 2015) at 1115).

[55] *Walker*, 200 F.3d 500.

[56] *Turner v. J.V.D.B & Assoc.*, 330 F.3d 991 (7th Cir. 2003) (citing *Gammon*).

[57] *Id.*

[58] Peck is also confused about IMC's address. Since October 17, 2017 Peck has seen four different addresses: PO Box 1280, Oaks, PA 19456-1280; PO Box 20636, Indianapolis, IN 46220-0636; 6955 Hillsdale Court, Indianapolis, IN 46250"; and (much more recently) 8085 Knue Road, Indianapolis, IN 46250. Such multiplicity is misleading.

**COUNT V – Violation of 15 USC §1692g(b)**[59]

REV-1's letter stated standard Fair Debt Collection Practices Act language (*e.g.*, "Unless you notify this office within 30 days of receiving this notice that you dispute the validity of this debt…"). The defendant, however, overshadowed this 30-days-to-dispute notice language with language to the contrary.[60] When a notice contains language that "overshadows or contradicts" other language informing a consumer of her rights, it violates the Act.[61]  The FDCPA leaves no room for deviation in the language of the notice.[62]

The key consideration is that the unsophisticated consumer is to be protected against confusion, whatever form it takes.[63] A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain of his or her rights. It is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer; Congress intended that such notice be clearly conveyed.[64] The language used by REV-1 overshadows and is "inconsistent with the disclosure of the consumer's right to dispute the debt".[65]  Peck seeks judgment in his favor for REV-1's overshadowing and inconsistency.

---

[59] 15 USC §1692g(b):
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt

[60] See, for instance: "you may also make your payment online by visiting our website at www.rev1solutions.com". When Peck read these words, his 30-day period had just begun (*i.e.*, December 14, 2017).

[61] *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) at 111 ("the juxtaposition of two inconsistent statements" renders the notice invalid under Sec. 1692g).

[62] *Jang v. A.M. Miller & Assoc.*, 122 F.3d 480 (7th Cir. 1997) at 482.

[63] *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323 (7th Cir. 2000) at 326.

[64] *Swanson v. Southern Or. Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988) at 1225.

[65] 15 USC §1692g(b).

## COUNT VI – Violation of 15 USC §1692e(2)(A)[66]

REV-1 used "false, deceptive, or misleading representation or means in connection with the collection of any debt" when it misrepresented the character, amount, or legal status of a non-existent debt.[67]

A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA.[68]

"An FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt".[69] "The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt."[70] Peck seeks judgment in his favor for REV-1's violation of 15 USC §1692e(2)(A).

---

[66] 15 USC §1692e(2)(A):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: … (2) The false representation of—(A) the character, amount, or legal status of any debt; …

[67] See *Jerman v. Carlisle*, 559 U.S. 573 (2010) ("Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, §1692e(2)(A).")

[68] *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993) (citing *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) at 1318).

[69] *Spears v. Brennan* (Ind. App. Ct. 2001) (citing *Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995) at 1317).

[70] *McMahon v. LVNC Funding* (case #12-3504) and *Delgado vs. Capital Mgmt Services* (7th Cir. 2014) case #13-2030, slip op. at 19.

**COUNT VII – Violation of 15 USC §1692f(1)**[71]

Peck didn't enter into a payment obligation concerning the transaction of money, property, insurance or services with REV-1. Nor has the defendant provided validation and evidence of such a payment obligation. Even if one existed, the "contract in no way provides sufficient verification of the debt."[72]

Peck doesn't know if the defendant has sought or will seek "any interest, fee, charge, or expense incidental to the principal obligation".[73] Nor does he know about REV-1's plans for attorney contingent fees for debt collection services.[74] Even if Peck was a debtor, owed a valid obligation, and could have disputed additional charges like attorney fees, he was not put on notice that he could dispute these additional attorney charges.[75] Although he has no knowledge of REV-1's intentions regarding attorney fees, Peck doesn't need to show the company's intentional conduct under the Act to be entitled to damages.[76] Peck seeks judgment in his favor

---

[71] 15 USC §1692f(1):

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

[72] *Spears v. Brennan* (IN App. Ct. 2001).

[73] 15 USC §1692(f)(1).

[74] See *Spears* (citing *Waxman Indus., Inc. v. Trustco Dev. Co.*, 455 N.E.2d 376, 381 (Ind. Ct. App. 1983)) ("A contingent fee, even between an attorney and his client, is not enforceable unless it is founded upon a prior agreement.") See also *Valparaiso Tech. Inst. v. Porter Co. Tr.*, 676 N.E.2d 416 (Ind.App.Ct. 1997) at 420 citing *Waxman* ("A contingent fee agreement in a collection case that is the product of a bargain between the attorney and client is presumed to be reasonable as between them[, but] it is an entirely different matter when the fee is added to the judgment against the debtor. In that instance the debtor has a direct pecuniary interest in how the fee is determined") and *Valparaiso* at 420–21 ("Thus, without other objective evidence of reasonableness, a contingent fee cannot be added to a judgment against a third party."

[75] *Spears* (citing *Baker v. G.C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982) at 778 re: "additional charges").

[76] *Russell*, 74 F.3d 30.

for REV-1's unfair or unconscionable means to attempt to collect any (alleged) debt not expressly authorized by the agreement creating such debt.

### COUNT VIII – Violation of 15 USC §§1692d, 1692f, and 1692k

Violations of §1692d are not limited to any particular form of harassment or abuse.[77]  Compare with §1692f(6), which speaks more specifically to other unconscionable means to collect alleged debts.[78]

By mailing its collection notice, REV-1 took a nonjudicial action to effect dispossession of Peck's property.[79]  The plaintiff believed REV-1 sought to collect money and information from him.[80]  His belief had a "natural consequence".[81]  He believed REV-1 had a "present intention to take possession of [this] property".[82]

REV-1's letter affected "the plaintiff in a personal and individual way".[83]  Peck's research into the complexities of debt collection were oppressive on his time. He suffered an "injury in fact".[84]  Peck seeks judgment in his favor for the defendant's violations of 15 USC §§1692d,

---

[77] 15 USC §1692d:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ...

[78] 15 USC §1692f(6):

> [T]he following conduct is a violation of this section: ... (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or ...

[79] 15 USC §1692f(6)(B).

[80] "This is an attempt to collect a debt and any information obtained will be used for that purpose."

[81] 15 USC §1692d.

[82] 15 USC §1692f(6)(B).

[83] *Lujan v. Defenders of Wildlife*, 504 U.S. at 560, n. 1.

[84] "A plaintiff [must demonstrate] (1) suffered an injury in fact, (2) that is fairly traceable to the

1692f(1) and (6)(B), and 1692k(a)(1), (2)(A), and (3).

## Damages Which Can Be Awarded

15 USC § 1692k(a) clearly identifies the civil liabilities for damages caused by a debt collector

who fails to comply with any provision of Subchapter V (Debt Collection Practices, §§1692 -

1692p), of Chapter 41 of Title 15 of the United States Code.[85] Thus, REV-1 is liable to Peck (1)

"in an amount equal to the sum of the actual damage[86] sustained by" Peck, (2) "such additional

damages as the court may allow, but not exceeding $1,000"[87], (3) "the costs of the action"[88], and

possibly "punitive" damages.[89]

---

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, slip op. at 5-6. "As relevant here, the injury-in-fact requirement requires a plaintiff to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Ibid.* at 7–11 (citing *Lujan*, 504 U.S. at 560).

[85] 15 USC §1692k(a):

> Except as otherwise provided by this section, any debt collector who fails tocomply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
> (1) any actual damage sustained by such person as a result of such failure;
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; ...
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith ..." [Unlike REV-1, there is no assertion that Peck acted in bad faith.]

[86] 15 USC §1692k(a)(1). *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997): "If the statute is violated, the debtor is entitled to obtain from the debt collector, in addition to any actual damages that the [alleged] debtor can prove, statutory damages not to exceed $1,000 per violation, plus a reasonable attorney's fee. § 1692k(a)."

[87] 15 USC §1692k(a)(2)(A).

[88] 15 USC §1692k(a)(3)'s "costs of the action" include "a reasonable attorney's fee as determined by the court." Such costs, except for attorney fees, "should be allowed to the prevailing party". Fed.R.Civ.P. 54(d)(1). The U.S. Supreme Court has held that 15 USC §1692k(d)(3) is not contrary to Rule 54(d)(1) and that "a venerable presumption that prevailing parties are entitled to costs" has been codified. *Marx*, S.Ct #11-1175, slip op. at 4 (J. Thomas).

[89] 15 USC §1681n(a). *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), S.Ct.#13-1339, slip op. at 3 (J. Alito): "... and possibly punitive damages. §1681n(a)." 15 USC §1681n(a)(2): "such amount of punitive

Any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of any actual damage sustained by such person as a result of such failure.[90]

The phrase "statutory damages" isn't listed at 15 USC §1692k(a)—in fact, it isn't mentioned at all in the Fair Debt Collection Practices Act.[91]   Perhaps the "statutory provision in question *implies* a right of action in the plaintiff."[92]   The 2010 *Jerman* case merged statutory damages with "additional damages [that are] subject to a statutory cap of $1,000 for individual actions".[93] Peck proceeds from this legal foundation.

"Congress has determined that the public as a whole has an interest in the vindication of the statutory rights."[94]   The defendant is liable for its violations of the Fair Debt Collection Practices Act.[95]  REV-1's interpretations of its "legal requirements of the FDCPA cannot be 'not intentional' under 15 USC §1692k(c)."[96]   It is a fair inference that Congress chose to permit injured consumers to recover actual damages, costs, fees, and modest statutory damages for "intentional" conduct, including violations resulting from mistaken interpretation of the

---

damages as the court may allow". . See also *Russell v. Equifax*, 74 F.3d 30 (2d Cir. 1996): "[A] debt collector violating the Act is liable for actual damages, plus costs and reasonable attorney's fees, as well as any other damages not exceeding $1,000 found appropriate by a trial court. See Sec. 1692k(a)."

[90] Quoting 15 USC §1692k(a)(1).

[91] In fact, the FDCPA doesn't even use the word "statutory". The same is true of the Fair Credit Reporting Act.

[92] Quoting *Warth*, 422 U.S. 501 [emphasis added].

[93] *Jerman*, ("...statutory 'additional damages.' §1692k(a).") **"A court may also award 'additional damages,' subject to a statutory cap of $1,000 for individual actions".** *Id.*

[94] *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995) (citing *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) citing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)).

[95] 15 USC §1692k(a). *Sheriff v. Gillie*, 136 S.Ct. 1594 (2016), slip op. at 3: "A debt collector who violates the Act is liable for both actual and statutory damages. §1692k(a)."

[96] Quoting *Jerman*, slip op. at 6-12.

FDCPA.[97]

The following are damages which can be awarded in this case under the FDCPA and FCRA.[98]

1. **Actual damages.**[99] Peck has now spent 253 hours dealing with REV-1's illegal activities. He charges $25 per hour for performing legal research and drafting legal papers. (The actual damages are therefore $6,325.)

2. **Costs-of-the-action damages.** Upon filing this COMPLAINT, Peck will have shouldered about $45 in "the cost of the action"[100] (*e.g.*, travel, USPS postage/certification) associated with this action. Also, the COURT may require the payment of a filing fee.

---

[97] Quoting *Jerman*. The FDCPA's limit for statutory damages is very modest: $1,000.

[98] See U.S. Supreme Court in *Spokeo v. Robins* (2016),
> The Act also provides that "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages.

and in *Jerman v. Carlisle* (2010),
> The FDCPA is but one of many federal laws that Congress has enacted to protect consumers. A number of these statutes authorize the filing of private suits against those who use unfair or improper practices. See, *e.g.*, 15 U. S. C. §1692k (FDCPA); §1640 (Truth in Lending Act); §1681n (Fair Credit Reporting Act); [ ] Several of these provisions permit a successful plaintiff to recover—in addition to actual damages—statutory damages, attorney's fees and costs, and in some cases punitive damages. *E.g.*, 15 U. S. C. §1640(a)(2) (statutory damages); §1640(a)(3) (attorney's fees and costs); §1681n(a)(1)(B) (statutory and punitive damages); §1681n(a)(1)(B)(3) (costs and attorney's fees); 49 U. S. C. §32710(a) ('3 times the actual damages or $1,500, whichever is greater'); §32710(b) (costs and attorney's fees); 11 U. S. C. §526(c)(3)(A) (costs and attorney's fees).

and in the Seventh Circuit's *Keele v. Wexler* (1998),
> The complaint requested statutory damages as provided for under § 1692k of the FDCPA, as well as actual damages, attorney's fees, litigation expenses and costs. * * * The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages. ... In other words, the Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not. ... We must focus on the debt collector's misconduct.

[99] See 15 USC §1692k(a)(1) and footnote 109, re: *Spokeo*, *Jerman*, and *Keele* ("actual damages").

[100] See 15 USC §1692k(a)(3). See also footnote 98 re: *Spokeo*, *Jerman*, and *Keele* ("costs").

3. **Additional damages.**[101] Peck seeks an aliquot part of $1,000 for each FDCPA violation (see COUNTS I through VII, above) that the COURT finds.

4. **Punitive damages.**[102] The defendant has caused the plaintiff a lot of needless distress. Peck seeks punitive damages three times (*i.e.*, $22,110) the total amount of actual, costs-of-the-action, and additional damages ($7,370).

## Prayer (Relief Wanted)

WHEREFORE, the plaintiff prays for:

- **actual damages** in the amount of $6,325 (thus far);
- **costs-of-the-action damages** ( $45 (thus far);
- **additional damages** in the amount of $1,000; and
- **punitive damages** in the amount three times as much as the accumulated total of the actual, costs-of-the-action, and additional damages.

---

[101] See 15 USC §1692k(a)(2) and *Azar*, 874 F. Supp. at 1317 (citing *Harper v. Better Business Services, Inc.*, 961 F.2d 1561 (11th Cir. 1992) at 1563).

[102] 15 USC §1692n(a). See also footnote 109 re: *Spokeo*, *Jerman*, and *Keele* ("punitive damages"). These opinions refer specifically to the Fair Credit Reporting Act, which will be an important discovery issue in this case.

## Complimentary Closing

Peck certifies, to the best of his knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances, that this COMPLAINT is not presented for an improper

purpose, the claims and legal contentions are warranted by existing law, and the factual

contentions have evidentiary support. FRCP 11(b).


Respectfully submitted,

Norman Peck, Plaintiff                          12 DECEMBER 2018
P.O. Box 273                                    Date
Kokomo, Indiana 46903
Telephone number: None
Facsimile number: None
Email address: legal_stuff@use.startmail.com


## Certificate of Service

I hereby certify my delivery of this original COMPLAINT by U.S. Mail (certification #7009 1410

0001 0556 0294) to the clerk of this COURT. Two additional copies of this 24-page COMPLAINT

are also enclosed for the defendant and myself. Other documents are also attached for the

COURT's attention.


Norman Peck, Plaintiff                          12 DECEMBER 2018
P.O. Box 273                                    Date
Kokomo, Indiana 46903
Telephone number: None
Facsimile number: None
Email address: legal_stuff@use.startmail.com